**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **REBECCA PARR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-804-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I.     Introduction and Administrative Proceedings**

Rebecca Parr ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on June 25, 2019 wherein she alleged disability onset as of April 12, 2019 due to heart attack, 100% blockage with one stent put in, pneumonia, spots on lungs, and depression.  (Tr. 22, 56-58, 72).[2]  Plaintiff's claims were denied at the initial level on September 27, 2019 (Tr. 22, 56-86), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 22, 100-01).  The ALJ subsequently heard the case on January 24, 2020, at which time testimony was given by Plaintiff (Tr. 22, 38-48) and by a vocational expert (Tr. 49-54).  The ALJ took the matter under advisement and issued a written decision on February 24, 2020, that found Plaintiff not disabled.  (Tr. 22-34).

---

[1]  Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022 (Exhibit 4D).

2. The claimant has not engaged in substantial gainful activity since April 12, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, myocardial infarction with stent placement, chronic obstructive pulmonary disease, and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must avoid unprotected heights and dangerous machinery. She should never climb on ladders or scaffolds, although she could occasionally climb ramps and stairs. She can tolerate occasional exposure to temperature extremes, humidity, wetness, and environmental irritants such as dusts, odors, fumes, and gases. The claimant is able to understand, retain and carry out simple instructions with few workplace changes. She is able to perform occasional decision-making with respect to work-related activities. She can engage in no more than occasional interaction with co-workers and supervisors.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 8, 1965 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school equivalent education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24, 25, 27-28, 33, 34).

On May 6, 2020, the Appeals Council originally denied Plaintiff's request for review of the ALJ's decision (Tr. 8-12) but later set aside the denial in order to consider additional evidence. (Tr. 1).  On August 18, 2020, the Appeals Council again denied Plaintiff's request for review (Tr. 1-6), thereby rendering the ALJ's decision the final decision of the Commissioner.  *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and remand the case for a new hearing and further consideration.  (Doc. 14 at p. 12).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 5, 6), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a

reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted simply because the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to

---

[4] *McDaniel* is an SSI case. Nonetheless, the same sequence applies to claims for disability insurance benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

speak English, educational deficiencies, and lack of job experience.  Each factor can independently

limit the number of jobs realistically available to an individual, and combinations of these factors

yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.    Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the evidence submitted to the

Appeals Council warrants remand; and (2) whether the ALJ properly evaluated the prior

administrative medical finding of non-examining state medical consultant Gloria L. Sellman, M.D.

when determining Plaintiff's RFC.  (Doc. 14 at p. 1).

## IV.    Discussion

### A.    Additional Evidence Submitted to the Appeals Council

On May 6, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's

decision.  (Tr. 8-12).  On July 1, 2020, Plaintiff requested the Appeals Council to reopen its

decision based on a June 1, 2020 Heart Impairment Questionnaire completed by Michael Ibe,

M.D., Plaintiff's treating cardiologist.  (Tr. 205-209).  In a checkmark form, Dr. Ibe indicated that

Plaintiff had angiographic evidence that showed "50 percent or more narrowing of a non-bypassed

left main coronary artery" and that she had a heart condition that "result[ed] in very serious

limitations in the ability to independently initiate, sustain, or complete activities of daily living."

(Tr. 207).  Dr. Ibe opined that Plaintiff could never lift 10 or more pounds, she could rarely lift

less than 10 pounds, and that she would miss about two days per month on average.  (Tr. 207-08).

Dr. Ibe also stated that the earliest date Plaintiff's symptoms and the limitations of the

Questionnaire applied was April 28, 2019.  (Tr. 209).  Dr. Ibe did not list Plaintiff's diagnoses.

(Tr. 207).  The Appeals Council set aside its earlier decision in order to consider the additional

information and on August 18, 2020 again denied Plaintiff's request for review of the ALJ's decision.  (Tr. 1-6, 491).

Plaintiff contends that the Appeals Council erred in denying review of her case, *i.e.*, that the June 1, 2020 Heart Impairment Questionnaire from Dr. Ibe would have reasonably changed the ALJ's decision that her coronary artery disease did not meet or equal Listing 4.04C.  (Doc. 14 at pp. 6-10).  The Commissioner contends that Plaintiff failed to show that the evidence submitted to the Appeals Council, when considered with the record as a whole, rendered the ALJ's decision erroneous and that, even if the Heart Impairment Questionnaire related to the period at issue, Plaintiff failed to show that it raised a reasonable probability of changing the ALJ's decision.  (Doc. 16 at p. 8).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007).  Evidence is properly presented if the evidence is "new [and] material," and it "relates to the period on or before the date of the hearing decision."  *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)); *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("[T]he Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits.").  The Appeals Council will review a case "if the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."

20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[5]  However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)).  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.  A court considers evidence submitted to the Appeals Council with the whole record to determine whether substantial evidence supports the ALJ's decision. *Id*. at 1266-67.

The Commissioners internal policy provides guidance on the meaning of "new," "material," and "relates to" as used in the regulations.  The Hearings, Appeals, and Litigation Law Manual ("HALLEX") explains that additional evidence "is new if it is not part of the claim(s) file as of the date of the hearing decision."  HALLEX I-3-3-6, 1993 WL 643129 (May 1, 2017).  The HALLEX explains that additional evidence is "material" "if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ," and that "[a]dditional evidence relates to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id*.  The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id*.

---

[5] In addition, the claimant must show "good cause" for not submitting the evidence to the ALJ. 20 C.F.R. §§ 404.970(b), 416.1470(b).

In finding that Plaintiff did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," the ALJ considered three listings: 3.02 (Chronic Respiratory Disorders), 4.04 (Coronary Artery Disease), and 12.04 (Depressive, Bipolar and Related Disorders).  (Tr. 25). Addressing Plaintiff's coronary artery disease, the ALJ found that the physical impairment did not meet or medically equal the listing in 4.04C as the record did not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of the listed impairment and no acceptable medical source designated to make equivalency findings concluded that the Plaintiff's impairment medically equaled that listed impairment. (Tr. 25).  Specifically, the ALJ found that Plaintiff did "not have coronary artery disease demonstrated by angiography, with angiographic evidence showing both: 1) 50 percent or more narrowing of a non-bypassed left main coronary artery; or 70 percent or more narrowing of another non-bypassed coronary artery; or 50 percent or more narrowing involving a long (greater than 1 cm) segment of a non-bypassed coronary artery; or 50 percent or more narrowing of at least two non-bypassed coronary arteries; or 70 percent or more narrowing of a bypass graft vessel; **and** 2) resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."   (Tr. 25) (emphasis in original).   Plaintiff asserts that Dr. Ibe's Questionnaire, along with the rest of the evidence in the record, establishes that Plaintiff met/or equaled Listing 4.04C.

A claimant bears the burden of proving that his or her impairments met or equaled a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement.  To 'equal' a

Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R.

§ 404.1525(a)-(d); 20 C.F.R. § 404.1526(a).  The duration requirement means that the impairment

"must have lasted or must be expected to last for a continuous period of at least 12 months."

20 C.F.R. § 404.1509.  "For a claimant to show that his impairment matches a listing, it must meet

*all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no

matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis

in original).  "For a claimant to qualify for benefits by showing that his unlisted impairment, or

combination of impairments, is 'equivalent' to a listed impairment, he must present medical

findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Id.* at 531

(emphasis in original).  "A claimant cannot qualify for benefits under the 'equivalence' step by

showing that the overall functional impact of his unlisted impairment or combination of

impairments is as severe as that of a listed impairment."  *Id.*  A claimant who is not currently

engaging in substantial gainful activity and who has a severe impairment which meets or equals a

listing is entitled to disability benefits, and the sequential evaluation of a claim ends.  *Edwards v.*

*Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

"The ALJ's finding as to whether a claimant meets a listed impairment may be implied

from the record.  Furthermore, while the ALJ must consider the Listings in making its disability

determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its]

determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting

*Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir.1986)).

Listing 4.04C provides:

4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as
described in 4.00E3–4.00E7, while on a regimen of prescribed treatment (see

4.00B3 if there is no regimen of prescribed treatment), with one of the following:
...
C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence showing:
a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
b. 70 percent or more narrowing of another nonbypassed coronary artery; or
c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
e. 70 percent or more narrowing of a bypass graft vessel; and
2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.04C.[6]  In addition to the requirements set forth in 1 and 2 above, more is required to meet Listing 4.04.  *Moye v. Saul*, No. 19-CV-60332, 2020 WL 1433280, at *11 (S.D. Fla. Mar. 24, 2020).  "For example, the introductory paragraph of Listing 4.04 Ischemic heart disease requires "'symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment) … .'"  *Jackson v. Colvin*, No. 1:15CV598, 2016 WL 7378996, at *4 (M.D. Ala. Dec. 20, 2016) (citation).  Also, Listing 4.00E9 requires that the claimant present "objective evidence, as described under 4.00C, that ... symptoms are due to myocardial ischemia."  *Id.*; 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.00E9a.  Further, Listing 4.04 requires an exercise

---

[6] The regulations define "Ischemic heart disease," as follows:
      What is ischemic heart disease (IHD)? IHD results when one or more of your coronary arteries is narrowed or obstructed or, in rare situations, constricted due to vasospasm, interfering with the normal flow of blood to your heart muscle (ischemia). The obstruction may be the result of an embolus, a thrombus, or plaque. When heart muscle tissue dies as a result of reduced blood supply, it is called a myocardial infarction (heart attack).
20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.00E1.

tolerance test ("ETT") or "in the absence of a timely exercise tolerance test or a timely normal

drug-induced stress test, [a medical consultant], preferably one experienced in the care of patients

with cardiovascular disease, has concluded that performance of exercise tolerance testing would

present a significant risk to the individual."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.04C; *see*

20 C.F.R. § Pt. 404, Subpt. P, App., § 14.00E9g ("We will use 4.04C only when you have

symptoms due to myocardial ischemia as described in 4.00E3–4.00E7 while on a regimen of

prescribed treatment, you are at risk for exercise testing (see 4.00C8), and we do not have a timely

ETT or a timely normal drug-induced stress test for you."); *Jackson*, 2016 WL 7378996, at *5.

While the ALJ did not make specific evidentiary findings with regard to Listing 4.04C in

the step three evaluation, the ALJ thoroughly discussed the medical record in determining that

Plaintiff did not meet Listing 4.04C.  *See Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967,

971 (11th Cir. 2014) ("The ALJ's conclusion that Prince did not meet that specific listing can be

implied from the ALJ's discussion of Prince's medical evidence relating to her coronary artery

disease and his general conclusion that Prince did not meet any medical listing.").  The ALJ

discussed the relevant, objective medical evidence as follows:

> The medical evidence of record shows the claimant had a left heart catheterization
> with percutaneous transluminal coronary angioplasty and stent to the right coronary
> artery on April 28, 2019 following a severe inferior wall myocardial infarction and
> thrombotic occlusion of 100 percent (Exhibit 2F, pp. 56, 134). A transthoracic
> echocardiography report on April 29, 2019 showed normal sinus rhythm, normal
> left ventricular wall thickness, inferior and inferolateral hypokinesis, ejection
> fraction visually estimated at 50% to 55%, moderately dilated right ventricle cavity,
> although right ventricle global systolic function was normal, moderate mitral and
> tricuspid regurgitation, and trivial inferolateral pericardial effusion (Exhibit 2F, p.
> 138).
>
> A follow-up visit with cardiologist Michael C. Ibe, M.D. on May 30, 2019 noted
> the claimant reported feeling well, with no chest pain or dyspnea on her prescribed
> medications. Upon examination, she had results within normal limits, including on
> respiratory, cardiovascular, and psychiatric examinations. Dr. Ibe's assessment
> included coronary artery disease and she was advised to continue medication

(Exhibit 1F).

An x-ray of the claimant's chest from June 21, 2019 showed a resolution of bilateral interstitial opacities from a CT of the chest taken on April 27, 2019, which indicated COPD and questionable opacities (Exhibit 2F, pp. 19, 146, 147). The x-ray also showed chronic changes in the lung apices and mildly calcified aorta, but normal heart size (Id.).

The claimant treated with Meshia Wallace, M.D. on August 8, 2019 and her examination noted no abnormalities with cardiovascular, lung, or psychiatric examinations (Exhibit 3F, p. 6). A CT of the claimant's chest from September 10, 2019 showed unspecified abnormal findings (Exhibit 5F, p. 4). From September to November 2019, records show the claimant continued to receive treatment at Mercy Medical Clinic (Exhibits 9F and 11F, pp. 25-27). A CT of the claimant's chest from September 12, 2019 showed a biapical subpleural bleb formation representing early COPD (Exhibit 9F, p. 7). The claimant had an examination within normal limits, but was assessed with coronary artery disease, COPD, and depression, and advised to continue medication (Exhibit 9F, p. 4). She continued to have examination results showing no abnormalities on November 26, 2019 (Exhibit 11F, p. 27).

On October 10, 2019 the claimant underwent a pulmonary function test showing normal spirometry with an FEV1 of 3L (120% of predicted), with flow volume loop demonstrating good effort, normal lung volumes, and a mild reduction in DLCO (Exhibit 11F, p. 19). The claimant had a routine follow-up visit with Dr. Ibe on December 2, 2019. Upon examination, her lungs were clear to auscultation bilaterally with no wheezes or crackles and normal respiratory effort. She had regular rhythm and rate cardiovascularly, with no heaves or thrills. She had a normal, steady gait and was alert and oriented in three spheres, with appropriate mood and affect. Dr. Ibe assessed the claimant with coronary artery disease and chronic stable angina (Exhibit 8F, pp. 3-4).

(Tr. 29-30, 213-15, 234, 271, 349, 353, 361-62, 414, 435, 449-50, 452-58, 479, 485-87).

In assessing the medical record with regard to Plaintiff's physical impairments, the ALJ

concluded:

> Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Physically, the claimant's impairments involve her pulmonary and cardiovascular systems. She has had myocardial infarction, with stenting. In addition, she has chronic obstructive pulmonary disease, primarily impacted by heat. However, her longitudinal examination results show results generally within normal limits and the claimant takes medication for her cardiac issues.

(Tr. 30).

The ALJ also noted that as to activities of daily living Plaintiff reported being able to care for her personal needs with no problems, doing household chores, preparing meals, shopping, watching television, crocheting, and painting.  (Tr. 26, 27, 29, 31, 167-71).  The ALJ found that while none of the activities was dispositive, taken together and considered in conjunction with the medical evidence of record, they suggested that Plaintiff could perform work within the parameters of the RFC—that is, limiting her to light work, never climbing ladders and scaffolds, only occasionally climbing ramps and stairs, with only occasional exposure to temperature extremes, humidity, wetness, and environmental irritants, and the need to avoid unprotected heights and dangerous machinery—on a sustained and continuous basis.  (Tr. 27-28, 30, 31).

In considering Dr. Ibe's opinion, the ALJ found it unpersuasive.  (Tr. 32).  Dr. Ibe stated that Plaintiff had inferior myocardial infarction and an emergent angioplasty and opined that she was in stable condition with a chronic stable angina, which was exacerbated with exertion and lifting heavy items.  (Tr. 32, 460).  The ALJ noted that Dr. Ibe indicated that based on Plaintiff's reporting that she was unable to lift over 10 pounds without having exertional dyspnea and angina, he opined that Plaintiff should avoid lifting items greater than 10 pounds.  (Tr. 32, 460).  The ALJ found that Dr. Ibe overestimated Plaintiff's limitations when viewed in the context of his own clinical examinations.  (Tr. 32, 448-50).  Plaintiff's December 2, 2019 examination showed the following cardiovascular findings: a regular rate rhythm ("RRR); no heaves or thrills; normal point of maximal impulse ("PMI"); no murmurs, rubs, or gallops; no carotid bruit; radial and dorsalis pedis 2+ b/l; no edema.  (Tr. 450).  Her respiratory findings were as follows: lungs clear to auscultation bilaterally ("CTAB"); no wheezes or crackles; normal respiratory effort.  (Tr. 50).  The ALJ stated, "[E]ven the text of the report indicates that he is relying upon the self-reporting

of the claimant when setting forth exertional limitations.    These self-reported complaints/ limitations conflict with the clinical and diagnostic studies performed by Dr. Ibe." (Tr. 32).

Under the revised regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). "The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she

15

considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022).  "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)).  "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

In considering Dr. Ibe's June 1, 2020 Questionnaire in conjunction with the rest of the record, the court concludes that there is not a reasonable probability that the additional evidence would change the outcome of the ALJ's decision.  Plaintiff argues that "[s]hould the Questionnaire be accepted, it would support a finding (1) 50 percent or more narrowing of a non-bypassed left main coronary artery and (2) limitations in [Plaintiff's] activities of daily living."  (Doc. 14 at p. 9).  However, the objective medical record does not support this conclusion, nor does Plaintiff

cite anywhere in the objective medical record, including Dr. Ibe's treatment notes, to angiographic evidence showing 50 percent or more narrowing of a nonbypassed left main coronary artery. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 4.04C1a.   Dr. Ibe's Questionnaire is a conclusory checkmark form that was apparently not based upon any examination of Plaintiff in 2020 and does not cite to any specific diagnostic testing or findings as the bases for his opinion.

Plaintiff admits that "the Questionnaire itself does not contain citations or explicit reference to objective medical evidence," but argues that "it is nonetheless implicitly based on Dr. Ibe's own objective medical findings, including diagnostic testing and clinical examinations he conducted on Ms. Parr during the relevant time period." (Doc. 21 at p. 2).  In support, Plaintiff cites as examples: "an office visit with Dr. Ibe at Pinnacle Cardiovascular dated May 30, 2019 [that] indicates that Dr. Ibe conducted a left heart catherization with percutaneous transluminal coronary angioplasty and a transthoracic echo on Ms. Parr on April 29, 2019" and a December 2, 2019 follow-up visit and examination at which Dr.  Ibe updated Plaintiff's treatment plan and recorded her progression with her coronary artery disease and chronic stable angina.  (*Id.*, citing Tr. 213, 449-450).  This evidence is insufficient, however, as it does not provide any documented evidence by way of angiography or other appropriate medically acceptable imaging showing that Plaintiff in fact had 50 percent or more narrowing of a non-bypassed left main coronary artery or evidence of a timely ETT.  *See* Moye, 2020 WL 1433280, at *11 ("In addition, Plaintiff failed to provide evidence of an angiography or a timely exercise tolerance test or a statement from a medical source explaining that such an exercise test could not be done without posing a risk to Plaintiff.  Furthermore, Plaintiff did not produce angiographic evidence showing the degree of arterial narrowing required in 4.04C(1)."); *Morris v. Astrue*, No. 3:06CV854J32, 2008 WL 899181, at *8 (M.D. Fla. Mar. 29, 2008) ("Although the records demonstrate Plaintiff suffered from various degrees of

coronary artery disease, there is no evidence in the record that Plaintiff met any of these findings."); *see also Jackson*, 2016 WL 7378996, at *5 ("There is no evidence in the record of an exercise tolerance test, nor has the plaintiff presented any evidence that a medical professional has concluded that she should not undergo one. The burden of proof initially lies with the plaintiff. … This failure of proof regarding the exercise tolerance test is sufficient for the court to conclude that the plaintiff does not meet or equal Listing 4.04.") (citations omitted).

Plaintiff does not argue that the ALJ at step three of the sequential evaluation process failed to consider angiographic evidence that existed in the medical record at the time of the ALJ's decision that showed 50 percent or more narrowing of a non-bypassed left main coronary artery. Instead, Plaintiff apparently is arguing that Dr. Ibe's conclusory Questionnaire has somehow transformed the medical evidence of record into angiographic evidence showing that Plaintiff had 50 percent or more narrowing of a non-bypassed left main coronary artery without citing to any acceptable imaging in support. Dr. Ibe's opinion as reflected in the Questionnaire does not change the ALJ's earlier determination, as Dr. Ibe's Questionnaire is not supported by his own treatment records or consistent with the other medical evidence in the record. *See* 20 C.F.R. §§ 404.1520c(a)-(c); 416.920c(a)-(c). The ALJ previously found that Dr. Ibe's report indicated that he relied upon the self-reporting of Plaintiff when setting forth exertional limitations. (Tr. 32). Dr. Ibe's Questionnaire would not change this conclusion—as the Questionnaire's findings were not supported by an examination of Plaintiff. Accordingly, the court finds that there is not a reasonable probability that Dr. Ibe's Questionnaire would have changed the ALJ's decision.

## B.  Evaluation of the Prior Administrative Medical Finding of Dr. Sellman

Plaintiff contends that there was no logical bridge between the ALJ's finding Dr. Sellman's opinion persuasive and then finding that Plaintiff could "occasionally tolerate exposure" to

extreme heat, extreme cold, humidity, and fumes/gases despite Dr. Sellman's opinion that she could <u>never</u> tolerate and should "avoid concentrated exposure to extreme heat, extreme cold, humidity, and fumes/gases." (Doc. 14 at p. 12, citing Tr. 28, 67) (emphasis in original). Plaintiff maintains that as a result of the ALJ's error the RFC is not substantially supported by Dr. Sellman's prior administrative finding, which the ALJ found persuasive. (*Id.* at p. 11).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)

(citations omitted).  Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."  *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

The portion of the RFC being contested by Plaintiff provides that Plaintiff "can tolerate occasional exposure to temperature extremes, humidity, wetness, and environmental irritants such as dusts, odors, fumes, and gases."  (Tr. 28).  In determining Plaintiff's RFC, the ALJ found Dr. Sellman's prior administrative finding to be "mostly persuasive," as it was consistent with the record as a whole.  (Tr. 31).  The ALJ considered Dr. Sellman's opinion, noting the following:

> Dr. Sellman opined the claimant could do a range of medium exertion work, lifting and/or carrying up to 50 pounds occasionally and up to 25 pounds frequently, pushing and pulling as much as she could lift and/or carry, with sitting, standing, or walking a total of 6 hours each in an 8-hour total workday. She could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation. Additionally, she should avoid all exposure to hazards such as machinery and heights (Id.).

(Tr. 31, 66-67).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945.  Thus, an ALJ "is not required to base[] [the] RFC on a doctor's

opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted).  While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate."  20 C.F.R. § 404.1513a(b)(1).  The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).  "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775, at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate.").  *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases).  Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'"  *Szoke*, No. 8:21-CV-502, 2022 WL 17249443, at *9 (citation omitted).

While the ALJ here found that Dr. Sellman's opinion was "mostly persuasive," the ALJ was under no obligation to adopt every part of Dr. Sellman's opinion.  "The regulations do not

require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, at \*9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)).  *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800, at \*8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646, at \*2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, at \*5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050, at \*3.

Despite Plaintiff's assertion that Dr. Sellman opined that she could <u>never</u> tolerate and should "avoid concentrated exposure to extreme heat, extreme cold, humidity, and fumes/gases," (Doc. 14 at p. 12, citing Tr. 28, 67), the record reflects that Dr. Sellman did not state that Plaintiff could <u>never</u> tolerate certain environmental conditions, only that she was to avoid <u>concentrated exposure</u> to certain environmental conditions.  Avoiding concentrated exposure is not the same as avoiding all exposure.  Further, avoiding concentrated exposure is less limiting than being restricted to occasional exposure to extreme heat, extreme cold, humidity, and fumes/gases.  *See Hamadi v. Kijakazi*, No. CV 20-220, 2021 WL 3772181, at \*3 (D.N.M. Aug. 25, 2021) (adopting Commissioner's position that the ALJ's RFC using the word "occasional" was <u>more</u> restrictive

than the agency's doctors' opinions using "avoid concentrated exposure," not less: "As a matter of common sense and the ordinary meaning of the terms, the ALJ did not reject the state agency consultants' opinions.  There is nothing contradictory in saying Ms. Hamadi may have 'occasional' exposure to pulmonary irritants and in stipulating that she must avoid 'concentrated' exposure. The RFC does not say Ms. Hamadi can perform jobs with 'concentrated' exposure to irritants.  The ordinary meaning of concentrated exposure indicates something that is beyond occasional exposure."); *Bernier v. Saul*, No. 18cv1633, 2019 WL 5296846, at *7-8 (D. Conn. Oct. 18, 2019) ("avoid concentrated exposure" is the "least restrictive limitation," unlike "occasional" exposure, and an RFC to "avoid concentrated exposure" is compatible with performing jobs that require "frequent" environmental exposure); *Young v. Berryhill*, No. 16cv112, 2017 WL 6352756, at *6 (N.D.W. Va. Dec. 13, 2017) ("concentrated exposure means more than occasional exposure," therefore job involving occasional (very little to 1/3 of the day) exposure to extreme heat was not precluded by someone who must avoid concentrated exposure) *accord Thomas v. Kijakazi*, No. 8:20-CV-2849, 2022 WL 897542, at *3 (M.D. Fla. Mar. 28, 2022).  Thus, Plaintiff benefitted by the ALJ's providing a greater restriction than opined by Dr. Sellman.

Moreover, Plaintiff fails to establish how limiting her to avoiding concentrated exposure to extreme heat, extreme cold, humidity, and fumes/gases would preclude her from being able to perform the jobs of routing clerk, mail clerk, and retail marker.  (Tr. 33).  The jobs of routing clerk, DICOT 222.687-022, 1991 WL 672133; mail clerk, DICOT 209.687-026, 1991 WL 671813; and retail marker, DICOT 209.587-034, 1991 WL 671802, all provide that the requirements of "Exposure to Weather," "Extreme Cold," "Extreme Heat," "Wet and/or Humid," and "Other Env. Cond." are "Not Present - Activity or condition does not exist."  Thus, Plaintiff cannot show any harm.

**V.**      **Conclusion**

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.   A separate judgment will issue.

**DONE** this the 30th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**